**UNITED STATES of America**

v.

**Ernest DAVIS.**

**Crim. No. 66–339.**

United States District Court
W. D. Pennsylvania.
March 13, 1967.

Gustave Diamond, U. S. Atty., by Vincent A. Colianni, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Carmen R. Damian, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER

MARSH, District Judge.

The defendant, Ernest Davis, was indicted for possession and transportation of distilled spirits, to-wit, 25 gallons, the immediate containers thereof not having been stamped as required by law in violation of § 5205(a) (2) of Title 26, U.S.C., contrary to § 5604(a) (1) of Title 26 U.S.C. He has moved to suppress and for return of evidence seized by an agent of the Alcohol and Tobacco Tax Division of the Internal Revenue Service for the reason that the search and seizure of his motor vehicle was

made without a warrant and in absence of probable cause.

At the hearing on the motion, the only witness called by the defendant was Charles L. Daverio, the agent who had executed the search and seizure. From his testimony, we find the following facts:

On Sunday, September 11, 1966, at approximately 9:00 o'clock in the morning, Agent Daverio received information via telephone from a reliable informer [1] that the defendant Davis would be transporting moonshine whiskey that morning in his 1960 Oldsmobile, and that he thought Davis would be driving on the Parkway East toward Pittsburgh. Acting on this information, the agent drove his car onto the ramp leading to the Squirrel Hill entrance to the Parkway East where he stopped at a point where he could observe the traffic on the Parkway.

Since 1958, the defendant had been personally known to the agent who had arrested him for liquor violations and knew that he had been arrested on other occasions by state and local authorities for liquor violations.

For a period prior to September 11th, he had been keeping the defendant's home on Rowley Street in the Hill District of Pittsburgh under surveillance, where on 5 or 6 occasions he observed the 1960 Oldsmobile parked in front of the house and was familiar with its characteristics. He had checked its license number and found that it was registered to the defendant.

At approximately 9:40 A.M., while watching the Parkway traffic, the agent saw the defendant's Oldsmobile traveling on the Parkway headed toward Pittsburgh. The agent followed. He observed that the front of defendant's car was in a raised position, and that the rear end was in a low position, indicating something heavy in the trunk. As he drew closer, he recognized the driver as the defendant.

At the Parkway's Bates Street exit, the agent sounded his siren and stopped defendant's car on the berm. The agent approached the defendant's car, greeted the defendant, who said: "Oh Chuck! Oh Chuck!" The agent inquired what he was carrying. The defendant replied: "You know what I've got." The agent asked: "How much?" The defendant replied: "25 gallons". The agent observed a plastic jug of the type known to be used in transporting moonshine on the rear floor of the vehicle. No *Miranda* warnings were given to the defendant.

Upon request, the defendant opened the trunk of the car. In the trunk the agent found 19 glass and 6 plastic unstamped one-gallon jugs containing moonshine whiskey. He thereupon placed defendant under arrest and seized the moonshine and the car.

■ Although the agent testified that he arrested the defendant after the search revealed the moonshine, we think, and so hold, that the arrest took place the moment the agent stopped the defendant's car. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134.[2] At that time the accusatory stage had been reached and the defendant as a practical matter was "deprived of his freedom of action in a significant way" (Miranda v. State of Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694). After the search, of course, the defendant was placed under formal arrest and taken into custody.

An Internal Revenue agent is authorized to make an arrest without a warrant for any offense against the United States committed in his presence, or for any felony cognizable under the laws of

---

1. Three years ago when the agent was previously assigned to Pittsburgh the informant had given him reliable information on 5 or 6 occasions.

2. In *Henry*, 361 U.S. at p. 103, 80 S.Ct. at p. 171 the Court stated: "When the officers interrupted the two men [stopped the car in which they were riding] and restricted their liberty of movement, the arrest, for purposes of this case, was complete."

the United States "if he has reasonable grounds to believe that the person to be arrested has committed, or is committing, such felony", and in respect to the performance of such duty "make seizures of property subject to forfeiture to the United States." Section 7608(a), 26 U.S.C.A.

█ "The 'reasonable ground' requirement of the statute is equivalent to the 'probable cause' requirement of the Fourth Amendment." United States v. LaMacchio, 362 F.2d 383, 384 (3d Cir. 1966). LaMacchio reiterates that the legality of a warrantless arrest must be tested by this standard because if made without probable cause the subsequent search and seizure was illegal.

Agent Daverio had a solid basis for believing that the defendant would traverse the Parkway East with a load of moonshine. Any doubt he might have had was dispelled when he observed the defendant's car pass the Squirrel Hill entrance appearing to be heavily loaded. The arrest of defendant was based upon four factors: (1) information received by the agent from a reliable informant; (2) the confirmation of that information received from the informant, viz.: that defendant would be driving his car on the Parkway East; (3) the heavily loaded appearance of defendant's car; and (4) the reputation of defendant as a known liquor law violator.

█ We think the combination of facts then and there existing were sufficient to warrant a man of reasonable caution to believe that the defendant was transporting contraband moonshine. Probable cause exists where the facts and circumstances within the knowledge of the arresting agent, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in believing that an offense had been or is being committed and that the person to be arrested was or is the offender. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879); United States v.

LaMacchio, supra, 362 F.2d p. 384; United States v. Bianco, 189 F.2d 716, 721 (3d Cir. 1951).

It is the court's conclusion that the agent, having probable cause, was justified in stopping the defendant's car and arresting him. This we find that the agent did. Therefore, the subsequent search of the car and seizure of the contraband liquor was validly made incident to the lawful arrest. Henry v. United States, supra, 361 U.S. p. 103, 80 S.Ct. 168; Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652; Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145; Draper v. United States, supra, 358 U.S. p. 311, 79 S.Ct. 329; Carroll v. United States, 267 U.S. 132, at 158, 45 S.Ct. 280, at 287, 69 L.Ed. 543, where it is stated:

"When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution."

In United States v. Duke, 369 F.2d 355 (7th Cir. 1966), the warrantless arrest, search and seizure were sustained where the basis of belief was weaker than in the instant case.

The right to arrest, search and seize without a warrant as recognized in *Draper* has been given effect in many cases, particularly where a moving object such as an automobile was involved. See: Carroll v. United States, supra; United States v. Duke, supra; United States v. Bianco, supra, 189 F.2d p. 722; United States v. Thomas, 319 F.2d 486 (6th Cir. 1963). In the latter case the court sustained the warrantless search of an automobile on quite similar facts with the statement (p. 488) that it was not necessary to obtain a search warrant "if it appeared likely at the time that the delay incident to obtaining a warrant would result in losing the opportunity to apprehend the law violator. [Citations omitted.]" In the case sub judice, the day was Sunday and defendant might have traversed the Parkway any time af-

ter 9:00 o'clock A.M. when the agent received the call. Cf. United States v. Rabinowitz, 339 U.S. 56, 65, 70 S.Ct. 430, 94 L.Ed. 653; United States v. Bianco, supra, 189 F.2d pp. 721-722; United States v. Duke, supra, 369 F.2d p. 357.

■ At argument, defendant contended that his admissions to the agent prior to the search should be excluded as a factor of reasonable belief because the agent did not advise him of his constitutional rights under Miranda v. State of Arizona, supra. We agree. However, probable cause to arrest the defendant was established by factors quite apart from any admissions made by him, and it appears that *Miranda* warnings are not a prerequisite to a warrantless search made after an arrest on probable cause. Cf. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, where, despite *Miranda* warnings and refusal to consent, a sample of blood was taken for alcohol analysis from the body of an arrested defendant, and the Supreme Court held that the report of the analysis was admissible in evidence over defendant's objection at the trial for driving while intoxicated.

An appropriate order will be entered.